*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-1644**

In re the Marriage of:

Robert Thomas Nord, petitioner A,
Respondent,

vs.

Katherine Elizabeth Bowers, petitioner B,
Appellant.

**Filed May 6, 2024
Affirmed
Reilly, Judge***

Anoka County District Court
File No. 02-FA-22-1752

William D. Siegel, Tarshish Cody, PLC, Richfield, Minnesota (for respondent)

William L.H. Lubov, Lubov Law, LLC, Golden Valley, Minnesota (for appellant)

Considered and decided by Connolly, Presiding Judge; Segal, Chief Judge; and Reilly, Judge.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**REILLY**, Judge

Appellant-wife challenges the district court's denial of her motion to reopen the parties' stipulated dissolution judgment and decree (stipulated J&D) under Minnesota Statutes section 518.145 (2022) for excusable neglect and fraud. *See* Minn. Stat. § 518.145, subd. 2(1), (3). Wife also challenges the district court's denial of her motion for attorney fees. Because the district court did not abuse its discretion by denying wife's motions, we affirm.

## FACTS

Appellant Katherine Elizabeth Bowers (wife) and respondent Robert Thomas Nord (husband) were married in July 2002. On October 28, 2022, the parties submitted a joint petition to dissolve their marriage. Neither party was represented by legal counsel at the time or throughout the dissolution proceedings. The district court rejected the parties' joint petition because it contained confidential financial information. The parties resubmitted the joint petition without the confidential financial information on November 18, 2022. Apart from omitting the confidential financial information, the resubmitted joint petition was identical to the original joint petition.

The joint petition provided details about the parties' financial status and indicated that each party wished to waive spousal maintenance. When the joint petition was executed, husband was employed and earned a salary of $82,000 per year—about $5,344.13 per month. During this same time, wife was not employed but received about $770 per month in social-security-disability benefits. Despite this discrepancy in monthly

incomes, husband and wife claimed that they were "fully capable of self-support" and did not require spousal maintenance. Accordingly, wife and husband waived spousal maintenance pursuant to the following provision:

> Neither party is awarded spousal maintenance. Both [p]etitioners have waived any claims to spousal maintenance for the past, present, or future, and expressly waive all rights to modify their waivers of maintenance. This court is divested of jurisdiction to award or modify maintenance in the future pursuant to *Karon v. Karon*, 435 N.W.2d 501 (Minn. 1989).

Husband and wife asserted that their waiver of spousal maintenance was "fair and equitable," "supported by the above consideration," and "signed by both parties after full financial disclosure to each other."

The joint petition also divided the parties' marital assets. The joint petition provided that the parties would sell their largest asset, their homestead, and equally divide the net proceeds. The joint petition also divided the parties' other assets: husband's and wife's individual bank accounts, husband's 401(k) retirement plan, the parties' shared vehicle, and a few small material possessions. The joint petition indicated that neither party owned any nonmarital property.

On November 29, 2022, the district court granted the parties' joint petition and filed an order to dissolve the parties' marriage by stipulated judgment and decree (J&D). The district court entered judgment on the J&D on December 1, 2022.

On December 5, 2022, husband brought wife to a hospital emergency department after she threatened to shoot herself. Wife's family members told hospital personnel that wife had recently traveled to Las Vegas and had been using THC products and exhibiting

3

paranoid, delusional, and aggressive behavior since she returned. According to wife's hospital records, wife has a history of obsessive-compulsive disorder, post-traumatic stress disorder, and borderline personality disorder, as well as a family history of schizophrenia. Based on this information, the county petitioned for judicial commitment of wife as a person who poses a risk of harm because of mental illness and recommended that she be held at a local hospital, pending a hearing.

On December 20, 2022, the district court found that wife posed a risk of harm based on "Substance (Delta-9) - Induced Psychotic Disorder" and determined that she satisfied the statutory criteria for civil commitment. But the district court stayed civil-commitment proceedings for six months, pursuant to several stipulated conditions.

On April 26, 2023, wife moved to reopen the parties' stipulated J&D under section 518.145 and filed a motion for attorney fees under Minnesota Statutes section 518.14, subdivision 1 (2022). In a supporting affidavit, wife argued that the parties' stipulated J&D should be reopened because husband committed fraud by failing to disclose her "severe mental health problems" to the district court, which in turn deprived her of spousal maintenance, her alleged nonmarital interest in the parties' homestead, and her alleged marital share of any "workers'-compensation and personal-injury claims" that husband may have. Wife asked the district court to award her permanent spousal maintenance, her marital share of husband's alleged legal claims, and attorney fees of $2,000.

Husband opposed wife's motions. Husband argued that wife was fully competent throughout the dissolution proceedings and that her mental-health issues did not arise until after the parties executed the joint petition. To support his argument, husband submitted a

4

personal affidavit along with affidavits from wife's two adult children and husband's stepfather.

In husband's affidavit, husband stated that the parties "had detailed discussions regarding the division of [their] assets and liabilities" and that wife "made intelligent contributions to these conversations." Husband explained that, while the parties were drafting the joint petition, wife went to the county courthouse and worked with a family-law clinic on multiple occasions to ensure that the petition "was drafted correctly and provided all necessary information." Husband also stated that wife intended to move to Las Vegas after the divorce was finalized and planned to supplement her income by working as a bartender. Husband explained that wife had "[run] the numbers related to her income and estimated budget" and determined that she did not "need or want any spousal maintenance" given her plans. Husband stated that wife "was logical, coherent, and levelheaded" throughout the dissolution proceedings and while she was planning her move to Las Vegas. Husband explained that wife left for Las Vegas on October 29, 2022, and returned in mid-November 2022, when she began "exhibiting bizarre behavior, including delusions and signs of paranoia." Husband attributed wife's erratic behavior to her increased intake of THC products, which she had acquired in Las Vegas.

Wife's children and husband's stepfather corroborated husband's statements. Wife's son stated that wife "was coherent, competent and able bodied" during dissolution proceedings and did not start exhibiting bizarre behavior until she returned from Las Vegas. Likewise, wife's daughter stated that wife "was fully aware of what was going on" during dissolution proceedings and did not show signs of "serious mental health issues"

5

until after she returned from Las Vegas. Finally, husband's stepfather described wife as "sharp" and "competent" and stated that her "psychotic break" occurred after the parties' divorce was finalized.

The district court denied wife's motion to reopen the parties' stipulated J&D. Crediting the affidavits of husband, wife's children, and husband's stepfather, and discrediting the affidavit of wife, the district court found that wife actively participated in preparing the joint petition and competently planned her move to Las Vegas. The district court likewise found that wife "was fully aware of what she was doing [during dissolution proceedings], made informed decisions relating to the dissolution of marriage, and indicated that she was satisfied with the decisions that had been made." And the district court found that wife showed no signs of paranoia or psychosis before the parties executed the joint petition or at the time of execution. Based on these findings, the district court concluded that wife had not shown that husband "committed fraud upon the [c]ourt" or that there was a "reasonable excuse for her failure . . . to act." Accordingly, the district court determined that wife was not entitled to relief from the stipulated J&D under section 518.145, subdivision 2(1), (3). The district court also determined that wife was not entitled to an evidentiary hearing or attorney fees.

Wife appeals.

## DECISION

Wife argues that the district court abused its discretion by denying her motion to reopen the parties' stipulated J&D and her motion for attorney fees. We address each issue in turn.

6

**I.** **The district court did not abuse its discretion by denying wife's motion to reopen the parties' stipulated J&D.**

Wife first challenges the district court's denial of her motion to reopen the stipulated J&D. The use of stipulations in dissolution proceedings is a judicially favored "means of simplifying and expediting litigation." *Shirk v. Shirk*, 561 N.W.2d 519, 521 (Minn. 1997). "Stipulations are therefore accorded the sanctity of binding contracts" and "cannot be repudiated or withdrawn from one party without the consent of the other, except by leave of the court for cause shown." *Id.* at 521-22 (quotation omitted). A party may seek to reopen a stipulated J&D under section 518.145, subdivision 2, however, for five statutorily prescribed reasons, including "excusable neglect" and "fraud . . . misrepresentation, or other misconduct of an adverse party." Minn. Stat. § 518.145, subd. 2(1), (3); *see also Shirk*, 561 N.W.2d at 522 ("The sole relief from [a stipulated J&D] lies in meeting the requirements of [section] 518.145, [subdivision] 2."). The party seeking to reopen a stipulated J&D bears the burden of proving at least one statutory ground by a preponderance of the evidence. *Knapp v. Knapp*, 883 N.W.2d 833, 835 (Minn. App. 2016).

We will not disturb a district court's denial of a motion to reopen a stipulated J&D under section 518.145, subdivision 2, absent an abuse of discretion. *Kornberg v. Kornberg*, 542 N.W.2d 379, 386 (Minn. 1996). "A district court abuses its discretion by making findings of fact that are unsupported by the evidence, misapplying the law, or rendering a decision that is against logic and the facts on record." *Knapp*, 883 N.W.2d at 835 (quotation omitted).

Likewise, we will not set aside a district court's finding of fact unless it is clearly erroneous. *Kornberg*, 542 N.W.2d at 386. A finding is clearly erroneous if it is "manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole." *In re Civ. Commitment of Kenney*, 963 N.W.2d 214, 221 (Minn. 2021) (quotation omitted). "In applying the clear-error standard, we view the evidence in a light favorable to the findings." *Id.* We also defer to the district court's credibility determinations. *Sefkow v. Sefkow*, 427 N.W.2d 203, 210 (Minn. 1988); *see also Vangsness v. Vangsness*, 607 N.W.2d 468, 472 (Minn. App. 2000). "That the record might support findings other than those made by the [district] court does not show that the court's findings are defective." *Vangsness*, 607 N.W.2d at 474.

Wife argues that the district court abused its discretion by denying her motion to reopen the stipulated J&D because (1) husband committed fraud and misrepresentation by failing to inform the district court of wife's "psychological condition" and neglecting to disclose certain assets; (2) wife's failure to correct the joint petition before it was entered into judgment constituted excusable neglect because wife's mental-health issues prevented her from understanding its terms; (3) the district court should have held an evidentiary hearing before deciding wife's motion to reopen the stipulated J&D; (4) the district court failed to consider whether the parties' waiver of spousal maintenance was fair and equitable; and (5) the district court failed to order an equitable division of the parties' marital and nonmarital property because certain assets were omitted from the marital estate. We consider each argument in turn.

### A.     Fraud or Misrepresentation

A district court may relieve a party from a dissolution judgment and "order a new trial or grant other relief as may be just" if the other party committed fraud. Minn. Stat. § 518.145, subd. 2(3). Where, as here, a party requests relief under section 518.145, subdivision 2(3), within one year of entry of judgment, the moving party need only show ordinary fraud, not fraud upon the court. *Doering v. Doering*, 629 N.W.2d 124, 129-30 (Minn. App. 2001), *rev. denied* (Minn. Sept. 11, 2001). "Ordinary fraud, in a dissolution context, does not require an affirmative misrepresentation or an intentional course of concealment because parties to a marriage dissolution have a duty to disclose all assets and liabilities completely and accurately." *Id.* at 130.

We review a district court's decision on whether to reopen a dissolution judgment based on fraud for an abuse of discretion. *Thompson v. Thompson*, 739 N.W.2d 424, 428 (Minn. App. 2007). But we review the factual findings that support a district court's decision on this issue for clear error. *Haefele v. Haefele*, 621 N.W.2d 758, 763 (Minn. App. 2001), *rev. denied* (Minn. Feb. 21, 2001). "Where evidence relevant to a factual issue consists of conflicting testimony, the district court's decision is necessarily based on the credibility of the witnesses." *Id.* In these situations, we afford district courts broad discretion "because they are in the best position to determine which witnesses are credible and to weigh the evidence." *Id.* This deference extends to district court credibility determinations that are based on conflicting affidavits. *Knapp*, 883 N.W.2d at 837. "If there is evidence to support the district court's decision, an abuse of discretion will not be found." *Thompson*, 739 N.W.2d at 428.

9

### 1. Husband's alleged nondisclosure of wife's mental-health issues

Wife first contends that husband committed fraud or misrepresentation by failing to inform the district court about wife's mental-health issues. In making this argument, wife appears to assert that the district court clearly erred by finding that she "did not begin exhibiting mental health issues until several weeks after the [j]oint [p]etition was executed" and by crediting the statements of husband, wife's children, and husband's stepfather as stated in their affidavits. We are not persuaded.

We first address wife's argument that the district court clearly erred by finding that wife did not begin exhibiting signs of mental illness until several weeks after the parties executed the joint petition. Based on our review of the record, this finding is not clearly erroneous. In making this finding, the district court credited the affidavits of husband, wife's children, and husband's stepfather. In these affidavits, wife's family members consistently described wife as being aware of her actions, involved in preparing the joint petition, and capable of making plans for the future. Wife's family members also consistently explained that wife did not begin exhibiting signs of mental illness until after she returned from Las Vegas, several weeks after the parties executed the joint petition. This evidence is sufficient to support the district court's finding about wife's metal illness. *See id.*

We next address wife's argument that the district court clearly erred by crediting the statements of husband, wife's children, and husband's stepfather, as set forth in their affidavits. Wife argues that the district court clearly erred by crediting these statements because they are not admissible as expert testimony under Minnesota Rule of

10

Evidence 702. Husband agrees that the family-member statements are not admissible under rule 702 but contends that they are admissible as opinion testimony under Minnesota Rule of Evidence 701. We agree with husband.

We conclude that the district court did not clearly err by crediting the statements of husband, wife's children, and husband's stepfather because these statements fall within the scope of rule 701. Rule 701 authorizes lay witnesses to provide testimony on opinions "which are (a) rationally based on the perception of the witness; (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of [r]ule 702." Minn. R. Evid. 701; *see also In re Welfare of Child of J.K.T.*, 814 N.W.2d 76, 93 (Minn. App. 2012). "The key question is whether the witness personally knows what he or she is talking about and whether the testimony will be helpful to the [fact-finder]." *J.K.T.*, 814 N.W.2d at 93 (alteration in original) (quotation omitted). As husband correctly notes, the statements of husband, wife's children, and husband's stepfather were not based on scientific, technical, or other specialized knowledge. Instead, these statements were based on the family members' direct observations of wife before, during, and after the parties executed the joint petition. Accordingly, the family members' statements constitute lay testimony under rule 701, not expert testimony under rule 702. *See* Minn. R. Evid. 701-702; *J.K.T.*, 814 N.W.2d at 93. Wife's argument that the district court clearly erred by crediting these statements because they are inadmissible under rule 702 is therefore unavailing.

11

## 2. Husband's alleged nondisclosure of certain assets

Wife next contends that husband committed fraud or misrepresentation by violating his duty to disclose the parties' assets to the district court. To facilitate the equitable division of property during a dissolution proceeding, the parties to the proceeding "must make a full and accurate disclosure of their assets and liabilities." *Bollenbach v. Bollenbach*, 175 N.W.2d 148, 155 (Minn. 1970). Failure to do so constitutes fraud and is grounds for reopening a dissolution judgment. *Ronnkvist v. Ronnkvist*, 331 N.W.2d 764, 766 (Minn. 1983); *see also Doering*, 629 N.W.2d at 129 (explaining that caselaw indicates "that the failure of a party to a dissolution to make a full and complete disclosure constitutes sufficient reason to reopen the dissolution judgment for fraud").

Wife asserts that husband violated his duty to disclose the parties' assets by failing to inform the district court about (1) wife's purported nonmarital interest in the parties' homestead, (2) husband's purported worker's-compensation and personal-injury claims, and (3) husband's 401(k) plan.[1] We are not persuaded.

We conclude that wife has not met her burden of proving that she is entitled to reversal based on husband's nondisclosure of the assets she identifies. As for wife's

---

[1] Wife also appears to argue that the district court abused its discretion by not reopening the stipulated J&D based on fraud because wife did not consult counsel and therefore "did not understand the concept of waiver as it related to spousal maintenance." As husband notes, wife does not provide any authority to support this argument. We therefore decline to consider it. *See Waters v. Fiebelkorn*, 13 N.W.2d 461, 464-65 (Minn. 1944) ("[O]n appeal error is never presumed. It must be made to appear affirmatively before there can be reversal. . . . [and] the burden of showing error rests upon the one who relies upon it."); *Loth v. Loth*, 35 N.W.2d 542, 546 (Minn. 1949) (quoting *Waters*); *Luthen v. Luthen*, 596 N.W.2d 278, 283 (Minn. App. 1999) (applying *Loth*).

purported nonmarital interest in the parties' homestead, wife has presented no evidence to support this alleged interest. Additionally, wife cites no authority to support her apparent assertion that husband was required either to disclose this alleged interest during the proceedings or to anticipate and preemptively defend against it. Regarding husband's purported workers'-compensation and personal-injury claims, wife again has presented no evidence to show that these legal claims exist or to support her stake in them. Finally, as for husband's 401(k), the stipulated J&D lists this asset and explains how it should be divided among the parties. Thus, there is no basis for concluding that husband's 401(k) was excluded from the marital estate. For these reasons, wife has not met her burden of proving that she is entitled to relief based on husband's alleged nondisclosure of wife's purported nonmarital interest in the parties' homestead, husband's purported legal claims, or husband's 401(k). *See Waters*, 13 N.W.2d at 464-65; *Luthen*, 596 N.W.2d at 283.

In sum, wife has not established that she is entitled to relief from the stipulated J&D based on husband's alleged nondisclosure of her mental-health issues or husband's alleged nondisclosure of certain assets. We therefore conclude that the district court did not abuse its discretion by denying wife's motion to reopen the stipulated J&D based on fraud. *See Knapp*, 883 N.W.2d at 835.

**B.   Excusable Neglect**

Wife also argues that the district court abused its discretion by denying her motion to reopen the stipulated J&D based on excusable neglect.

Under section 518.145, subdivision 2(1), a district court may relieve a party from a dissolution judgment and order a new trial or other just relief for "excusable neglect."

13

Minn. Stat. § 518.145, subd. 2(1). The language in section 518.145, subdivision 2(1), is identical to the language in Minn. R. Civ. P. 60.02(a), and this court has "addressed both the statute and the rule in appeals from district court orders denying motions to vacate dissolution judgments." *Knapp*, 883 N.W.2d at 836. As a result, a district court may analyze a party's motion to reopen a dissolution judgment for excusable neglect under rule 60.02. *See id.* at 836-37.

To be entitled to relief under rule 60.02, the moving party "must establish (1) a reasonable case on the merits; (2) a reasonable excuse for the failure to act; (3) action with due diligence after entry of judgment; and (4) lack of prejudice to the opposing party." *Reid v. Strodtman*, 631 N.W.2d 414, 419 (Minn. App. 2001) (citing *Finden v. Klaas*, 128 N.W.2d 748, 750 (Minn. 1964)). While the moving party must satisfy all four of these factors, "a weak showing on one factor may be offset by a strong showing on the others." *Id.*

In denying wife's motion to reopen the stipulated J&D for excusable neglect, the district court found that wife did not satisfy the first and second factors under rule 60.02 because wife "failed to demonstrate that her mental or emotional condition at the time she signed the [j]oint [p]etition prevented her from fairly and reasonably understanding what she was agreeing to." The district court also found that wife did not satisfy the fourth rule 60.02 factor because reopening the stipulated J&D would "substantial[ly] prejudice" husband, "given that the parties' divorce has been finalized for approximately ten (10) months."

14

Wife asserts that the district court's findings on these factors are clearly erroneous because (1) she established a reasonable case on the merits by showing "more than a reasonable likelihood that she should be awarded permanent spousal maintenance," a share of the assets she alleges husband failed to disclose, and attorney fees; (2) she was reasonably excused from failing to challenge the joint petition because she did not understand it because of her mental illness; and (3) reopening the stipulated J&D would not substantially prejudice husband. We disagree.

At a minimum, the record shows that wife has not satisfied the second rule 60.02 factor and is thus not entitled to relief for excusable neglect. *See Reid*, 631 N.W.2d at 419. As discussed above, the district court did not clearly err by finding that wife did not show any signs of mental illness until several weeks after she executed the joint petition. For these reasons, the district court did not clearly err by finding that wife failed to establish "a reasonable excuse for [her] failure to act" under rule 60.02. *See id.* Because wife has not satisfied the second rule 60.02 factor, she is not entitled to relief under rule 60.02(a) or its statutory corollary, section 518.145, subdivision 2(1). *See id.* We therefore conclude that the district court did not abuse its discretion by denying wife's motion to reopen the stipulated J&D based on excusable neglect. *See Knapp*, 883 N.W.2d at 835.

### C. Denial Without a Hearing

Wife next contends that the district court abused its discretion by denying her motion to reopen the stipulated J&D because the district court "failed to adequately consider" whether an evidentiary hearing was warranted under Minnesota Statutes section

15

518.13, subdivision 5 (2022).[2] Under section 518.13, subdivision 5(1), a dissolution judgment and decree "must be submitted to the court for approval and filing *without a final hearing*" when "there are no minor children of the marriage" and "the parties have entered into a written stipulation." (Emphasis added.) But a district court "shall schedule the matter for hearing in any case where the proposed judgment and decree . . . is contrary to the interests of justice." Minn. Stat. § 518.13, subd. 5. Wife asserts that the stipulated J&D "is contrary to the interest[s] of justice" because it was executed while wife was suffering from mental illness and because it is not fair and equitable. Wife argues that the district court should have held an evidentiary hearing, given these circumstances.

Motions in family-law cases generally "are decided without an evidentiary hearing, unless otherwise ordered by the court for good cause shown." *Doering*, 629 N.W.2d at 130 (quoting Minn. R. Gen. Prac. 303.03(d)). Minnesota courts have not yet defined "good cause" in the context of motions to reopen dissolution judgments. *See id.*; *see also Thompson*, 739 N.W.2d at 430. But this court has held that a district court may not resolve a motion to reopen a dissolution judgment without an evidentiary hearing unless "there is no genuine issue of material fact in dispute and . . . a determination of the applicable law will resolve the controversy." *Doering*, 629 N.W.2d at 130 (quotation omitted). When determining whether an evidentiary hearing is required in this context, "the district court may not weigh the evidence." *Id.* "Instead, the district court must view the evidence in

---

[2] Wife also argues that the district court abused its discretion by "not schedul[ing] a hearing before approving the [stipulated J&D]." Wife cites no authority to support this argument. Accordingly, we decline to consider it. *See Waters*, 13 N.W.2d at 464-65; *Luthen*, 596 N.W.2d at 283.

the light most favorable to the nonmoving party." *Id.* "Whether to hold an evidentiary hearing on a motion generally is a discretionary decision of the district court, which we review for an abuse of discretion." *Thompson*, 739 N.W.2d at 430. "But whether the district court applied the correct legal standard is a question of law, which we review de novo." *Id.*

In denying wife's motion to reopen the stipulated J&D, the district court found that "viewing the evidence in the light most favorable to [wife], . . . [wife]'s affidavit is insufficient to present a fact question of fraud and/or excusable neglect." Accordingly, the district court found that there was "not good cause for an evidentiary hearing" on wife's motion to reopen the stipulated J&D. We agree with the district court.

Wife's motion to reopen the stipulated J&D was insufficient to create a genuine issue of material fact about whether wife was entitled to relief from the stipulated J&D based on fraud or excusable neglect. To support her motion to reopen the stipulated J&D, wife submitted a brief affidavit; a county civil-commitment screening report, dated December 7, 2022; and a civil-commitment order, dated December 20, 2022. The county report stated that wife was placed on a 72-hour medical hold because of mental-health issues exhibited on December 5, 2022. And wife's affidavit stated that she "did not understand the terms of the [j]oint [p]etition," including her waiver of spousal maintenance, because she "was having severe mental health problems" when the parties executed the petition. At most, this evidence establishes that wife experienced mental-health issues more than one month after the parties executed the joint petition. Without more, wife's bare assertion that she experienced these mental-health issues earlier is insufficient to

17

create a genuine issue of material fact on the issues of fraud or excusable neglect. *See Doering*, 629 N.W.2d at 132 (concluding that appellant's detailed affidavits were "sufficient to present a fact question of fraud" and that appellant therefore "established good cause for an evidentiary hearing on his motion to reopen the judgment"). We thus conclude that the district court did not abuse its discretion by denying wife an evidentiary hearing on her motion to reopen the stipulated J&D. *See Thompson*, 739 N.W.2d at 430.

### D. Waiver of Spousal Maintenance

Wife next argues that the district court abused its discretion by denying her motion to reopen the stipulated J&D because the district court failed to consider whether the parties' waiver of spousal maintenance was fair and equitable considering the discrepancy between the parties' incomes. Wife also contends that the district court failed to make necessary findings under Minnesota Statutes section 518.552, subdivision 5 (2022), which governs "[p]rivate agreements" related to the waiver or restriction of spousal maintenance. These arguments are unavailing.

Wife's assertion that the district court failed to adequately consider the parties' waiver of spousal maintenance fails because it is not properly before us. In making this argument, wife challenges the district court's entry of judgment on the parties' stipulation—*not* the district court's denial of wife's motion to reopen the stipulated J&D. In *Shirk*, the supreme court held that a stipulation "merge[s]" into a judgment and decree when the judgment and decree is based on the stipulation and "cannot thereafter be the target of attack by a party seeking relief from the judgment and decree." 561 N.W.2d at 522. The supreme court then clarified that "[t]he sole relief from the judgment and decree

lies in meeting the requirements of [section] 518.145, [subdivision] 2." *Id.* As discussed above, wife has not met the requirements of section 518.145, subdivision 2. Wife therefore has not established that she is entitled to relief from the stipulated J&D and may not challenge the district court's decision to enter judgment on the parties' stipulation.

### E. Equitable Division of Assets

Lastly, wife contends that the district court abused its discretion by denying her motion to reopen the stipulated J&D because the district court did not fairly and equitably divide the parties' assets due to husband's alleged failure to disclose wife's purported nonmarital interest in the parties' homestead and wife's purported marital interest in husband's purported worker's-compensation claims, husband's purported personal-injury claims, and husband's 401(k) account. To support her argument, wife cites Minnesota Statutes section 518.58 (2022), which requires the district court to "make a just and equitable division of the marital property of the parties." Minn. Stat. § 518.58, subd. 1. Wife also cites *Pooley v. Pooley*, where the supreme court held that a party could bring a motion to reopen a dissolution judgment outside the one-year statute of limitations set forth in section 518.145, subdivision 2, if the motion sought the equitable division of "major assets" that were omitted from the dissolution judgment. 979 N.W.2d 875, 877 (Minn. 2022). Wife therefore appears to argue that her purported nonmarital interest in the parties' homestead, and purported marital interest in certain assets of husband were "omitted" from the stipulated J&D and the district court should have reopened the stipulated J&D to ensure that these assets are equitably divided.

19

Once again, wife has not established that she is entitled to relief. As discussed above, wife has presented no evidence to substantiate her purported nonmarital interest in the parties' homestead or her purported marital interest in husband's purported legal claims or husband's 401(k). And the stipulated J&D expressly lists husband's 401(k) as an asset and explains how it should be divided between the parties. Thus, there is no basis for concluding that the listed assets were "omitted" from the stipulated J&D or that the stipulated J&D should be reopened to allow for their equitable division. *See id.* at 878-79 (reversing and remanding to allow district court to equitably divide parties' assets that were undisputedly omitted from dissolution judgment); *Waters*, 13 N.W.2d at 464-65; *Luthen*, 596 N.W.2d at 283. We therefore decline to reverse the district court's decision on this basis.

## II. The district court did not abuse its discretion by denying wife's motion for attorney fees.

Wife also challenges the district court's denial of her motion for attorney fees under section 518.14, subdivision 1. We review a district court's decision regarding attorney fees for an abuse of discretion. *Haefele*, 621 N.W.2d at 767.

"Generally, attorney fees in dissolution cases are governed by [section] 518.14, [subdivision] 1, which allows both need-based and conduct-based fee awards." *Geske v. Marcolina*, 624 N.W.2d 813, 816 (Minn. App. 2001). A district court "shall" award need-based attorney fees to a party if the district court finds that (1) the fees are necessary for the recipient to make a good-faith assertion of their rights, (2) the payor has the means to pay the fees, and (3) the recipient does not have the means to pay the fees. Minn.

20

Stat. § 518.14, subd. 1; *see also Geske*, 624 N.W.2d at 816. A district court may award conduct-based attorney fees "against a party who unreasonably contributes to the length or expense of the proceeding." Minn. Stat. § 518.14, subd. 1; *see also Geske*, 624 N.W.2d at 818. The party seeking attorney fees under section 518.14, subdivision 1, bears the burden of showing the propriety of the requested award. *Phillips v. LaPlante*, 823 N.W.2d 903, 907 (Minn. App. 2012) (need-based attorney fees); *Geske*, 624 N.W.2d at 819 (conduct-based attorney fees).

The district court denied wife's motion for attorney fees under section 518.14, subdivision 1, because her motion to reopen the stipulated J&D "[had to] be denied." Wife argues that she was entitled to attorney fees under section 518.14, subdivision 1, because she "satisfie[d] all statutory criteria for such an award." We are not persuaded.

The record shows that wife has not met her burden under section 518.14, subdivision 1. As for her request for need-based attorney fees, wife failed to prove that she satisfied *any* of the statutory criteria for such an award, let alone all three criteria. *See* Minn. Stat. § 518.14, subd. 1; *see also Phillips*, 823 N.W.2d at 907 (explaining that "[t]he party seeking need-based attorney fees must prove" the three criteria set forth in section 518.14, subdivision 1). Regarding her request for conduct-based attorney fees, wife similarly failed to establish that husband's conduct during litigation "unreasonably contribute[d] to the length or expense of the proceeding." *See* Minn. Stat. § 518.14, subd. 1; *see also Geske*, 624 N.W.2d at 818-19. Because wife has not met her burden of proving that she was entitled to need-based or conduct-based attorney fees under section 518.14,

subdivision 1, the district court did not abuse its discretion by denying wife's motion for attorney fees.

**Affirmed.**